Cürr, J.
I entirely agree in the remark of the appellee’s counsel, that to justify us in reversing this judgment, and sending the cause back for a new trial, we ought to be satisfied that the verdict is clearly wrong; that it is, as judge Roane expresses it, “ a plain deviation.” And such I cannot but think it is. We must take Moseley to have been not a testamentary but a common law guardian. The condition of the bond describes him as having been “appointed guardian of Caroline Moseley &c. by the court of the county of Buckingham.” Now, this could not have been truly said, if the appointment had been by will; for though, in such case, the bond is to be given to the court, yet the guar *368 dian is first to appear in open court, and declare his acceptance of the trust, which is to be recorded, 1 Rev. Code, ,ch. 108. § 2. p. 406. and the bond would surely conform to this record. Taking him as a common law guardian, it is clear that his guardianship was terminated by the marriage of the ward. Mendes v. Mendes, 1 Ves. sen. 91. How did the parties consider it 1 Clearly in the same light; for, though it is stated that no actual delivery of the land was made to the husband (which, by the way, I do not consider necessary to give him the legal possession, there.being no adverse holding), yet it is a fact in the case, that after the marriage, “Moseley continued to manage the plantation as agent.” Why not as guardian ? because that office had ended by the marriage. As agent for whom ? Not for the infant feme covert; she was under a twofold disability to appoint such an agent: of necessity, then, as agent for the husband. The acts of Moseley shew that he understood it thus. When the wheat was severed from the land, it became, as I take it, the clear and absolute property of the husband; and Moseley sold it to the defendant as the wheat of Guerrant, thus shewing whose agent he considered himself. The receipts too, taken of the miller by the overseer, were in the name of Guerrant; he also fixed the price of the wheat, which had been left open; and to this Moseley assented, thereby again recognizing Guerrant's ownership. And if it had not been for the plaintiff’s misfortune in losing his wife, we should never have heard of the pretension since set up : but this event could not divest a right already reduced to possession. Further, upon what safe ground could the defendant Mocker refuse to pay to the plaintiff, and pay to the agent, when expressly forbidden to do so ? He had acknowledged the ownership of the plaintiff, by giving the receipts as for his wheat, and by afterwards fixing the price with him. Under these circumstances I am of opinion that he paid in his own *369 back for a new trial.
Tucker, P.
I think it clear, that the property in the wheat sold to HocJcer was in the plaintiff Guerrant. He married Moseley’s ward in May 1828, Moseley then holding possession of her land as guardian. What was the effect of that marriage upon the guardianship ? It determined it, ipso facto. Lord Hardwicke, indeed, in Roach v. Garvan, 1 Ves. sen. 157. says, the court will not determine a guardianship because of a marriage of a ward of the court; and in Mendes v. Mendes, 3 Atk. 625. he is represented as saying, that notwithstanding the marriage of the young earl of Shaftsbury, his guardianship did not determine by his marriage (which, by the way, was, I presume, beyond question); but in the report of that case in 1 Ves. sen. 91. he remarked in addition, that marriage determines the guardianship of daughters, though not of sons. And, truly, it seems impossible it should be otherwise. If the contract of marriage be valid, all the consequences or incidents of that contract must at once ensue. By the marriage the husband at once becomes invested with the right to the society and person of his wife, and her personalty in possession becomes instantly vested in him jure mariti: he is at once invested also, with the right and possession of all her real estate, in her right; and with her rights of action for whatever, whether of personalty or realty, she may be wrongfully deforced of. All her rights determine during the coverture, and are swallowed up in his ; and if the guardianship as to her properly were to continue, the guardian would from the date of the marriage be his guardian, not hers.
If then, as I take it, the guardianship determined on the marriage, how did Moseley hold the land until Mrs. Guerrant’s death ? The case proved states that he held *370 it as agent; not totidem verbis, that he held as agent of Guerrant, but it is plain that that was meant. ' In the absence of a statement to the contrary, we must take it, that he held as agent of the person entitled: and that was Guerrant. Accordingly, when the crop was severed, he-sold it as Guerrant’s. Holding, then, as Guerrant’s agent, his possession was Guerrant’s possession ; and when the wheat was severed, the possession of it by Moseley was Guerrant’s possession. So far from his holding possession adversely, he actually sold it in Guerrant’s name, and took the receipts to him, and not to himself, for the wheat that was delivered. Indeed, he could have had no other possession than as agent. He came in by right, and he who has gained a rightful possession, cannot without some tort convert it into one which is wrongful. He could not make that possession adverse, which he received as fiduciary. His possession, therefore, was the possession of Guerrant from the moment his powers determined. He, at most, could only be tenant by sufferance, whose possession is the possession of the landlord: but, in fact, he claimed no longer to hold but as agent, for it is found that after the marriage “ he continued to manage the farm as agent.” The wheat, then, having been the absolute property of Guerrant, having been sold by Moseley to Mocker as Guerrant’s, Mocker should have paid him, instead of paying the proceeds of sale over to Moseley, after notice not to do so. The action therefore was properly sustainable, and the verdict wrong. A single consideration will prove this. Had Moseley sued. Mocker for the wheat, which was Guerrant’s property, he must have sued upon the special contract: quantum valebat would not have lain, because there was a sale for an agreed price. But the special contract on which the suit must have been brought, was not a contract with Moseley. It was a contract in which Moseley was expressly contracted with as the agent of Guerrant, and all the re *371 ceipts were m Guerrant s name. How, then, could , , Moseley have recovered r
The other judges concurred. Judgment reversed, and cause remanded for a new trial.